IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MOVSOVITZ & SONS OF FLORIDA, INC. et al., :<br>:<br>Plaintiffs :<br>:<br>v. :<br>(SEC) :<br>SCOTIABANK :<br>:<br>Defendant :<br>: | Civil Action No: 04-2254 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS
MOVSOVITZ & SONS OF FLORIDA, INC. AND WEST COAST
<u>DISTRIBUTING, INC. MOTION FOR SUMMARY JUDGMENT</u>**

**Table of Contents**

I.   BACKGROUND ................................................................................................... 1

II.  ARGUMENT ....................................................................................................... 2

   A.  The Standard to Be Applied. ..................................................................... 2

   B.  There Are No Material Facts In Genuine Dispute. .................................... 4

   C.  The Nature and Scope of the PACA Trust. ............................................... 4

   D.  Scotiabank Must Disgorge the Proceeds it Received from the Sale of Property Owned by North Produce and Mr. González and the Payments of the Loans it Received from North Produce. ................................................................... 8

      1.  Movsovitz and West Coast Are PACA Trust Creditors of North Produce. .......... 8

      2.  The Proceeds Scotiabank Received from the Foreclosure Sale of Mr. González's Residence are Impressed with the PACA Trust and Belong to Movsovitz and West Coast. ........................................................................................ 8

      3.  The Proceeds Scotiabank will Receive from the Foreclosure Sale of Mr. González's Real Property are Impressed with the PACA Trust and Belong to Movsovitz and West Coast. ..................................................................................... 9

      4.  Scotiabank Must Disgorge the $82,243.77 it Received from North Produce after North Produce Ceased Operations Because the Funds are PACA Trust Assets that Belong to Movsovitz and West Coast. .......................................................... 10

      5.  Scotiabank Must Disgorge the $34,624.00 it Received in Payments from North Produce after North Produce Became Insolvent Because the Funds are PACA Trust Assets that Belong to Movsovitz and West Coast. .................................... 12

      6.  The Proceeds Scotiabank Received from the Sale of North Produce's Equipment are Impressed with the PACA Trust and Belong to Movsovitz and West Coast. . 12

III. CONCLUSION .................................................................................................. 13

## Table of Authorities

**Cases**

*Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 1995 WL 766306 (S.D.N.Y. 1995). 11
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 2
*Bhan v. NME Hosps., Inc.*, 929 F.2d 1404 (9th Cir. 1991) ................................................... 3
*Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999) ............................................ 2
*C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311 (11th Cir. 1992) .................. 11
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................... 2, 3
*Continental Fruit v. Thomas J. Gatziolis & Co.*, 774 F. Supp. 449 (N.D. Ill. 1991) .............. 7
*DeNovellis v. Shalala*, 124 F.3d 298 (1st Cir. 1997) ........................................................... 4
*Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990) .............................................. 5
*Gullo Produce Co., Inc. v. Jordan Produce Co., Inc.*, 751 F. Supp. 64 (W.D. Pa. 1990) ...... 7
*Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256 (11th Cir. 2004) .............. 3
*Hinchey v. NYNEX Corp.*, 144 F.3d 134 (1st Cir. 1998) ...................................................... 2
*In re Atlantic Tropical Market Corp.*, 118 B.R. 139 (Bkrtcy. S.D. Fla. 1990) .................. 5, 6
*In re Fresh Approach, Inc.*, 51 B.R. 412 (Bkrtcy. N.D. Tex. 1985) ...................................... 5
*In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996) ......................... 5, 6, 7, 9, 10, 11, 13
*In re Monterey House, Inc.*, 71 B.R. 244 (Bkrtcy. S.D. Tex. 1986) ...................................... 5
*Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220 (11th Cir. 2002) ............... 2
*International Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ............................. 6
*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991) ..................... 3
*J. R. Brooks & Son, Inc. v. Norman's Country Market, Inc.*, 98 B.R. 47 (Bkrtcy. N.D. Fla. 1989) ............................................................................................................................... 7
*Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871 (1990) ........................................................... 3
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................... 2
*O'Ferrell v. United States*, 253 F.3d 1257 (11th Cir. 2001) ................................................ 2
*Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1110 (6th Cir. 1993) .. 6
*Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000) ...................................................... 3
*Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132 (3d Cir. 2000) ....... 5, 7
*United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) ............. 3
*US Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465 (9th Cir. 1994) ......................... 3, 4

**Statutes**

7 U.S.C. § 499e ............................................................................................... 1, 4, 5, 7, 8

**Other Authorities**

H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.C.C.A.N. 405 ....... 4, 7

**Rules**

7 CFR § 46.46 ................................................................................................................ 7, 8
Fed. R. Civ. P. 56 ............................................................................................................... 2

Plaintiffs, Movsovitz & Sons of Florida, Inc. ("Movsovitz") and West Coast Distributing, Inc. ("West Coast"), submit this memorandum of law in support of their Motion for Summary Judgment.

## I.     BACKGROUND

Plaintiffs, Movsovitz and West Coast, are engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities ("produce") in interstate commerce.  Statement of Facts ¶¶ 1-2.  Axel González, Inc. d/b/a North Produce ("North Produce") was a dealer of produce licensed under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, as a dealer.  Statement of Facts ¶ 3.  Mr. González was an officer and director of North Produce.  Statement of Facts ¶ 4.  Defendant Scotiabank is a secured lender of North Produce.  Statement of Facts ¶ 5.  Between January 18, 2002 and February 26, 2002, Movsovitz sold various wholesale lots of produce worth $116,217.50 to North Produce, and West Coast sold various wholesale lots of produce worth $120,588.80 to North Produce.  Statement of Facts ¶¶ 7-8.  North Produce failed to pay Movsovitz and West Coast for the produce delivered.  Statement of Facts ¶ 11.

Scotiabank entered into various loan agreements with North Produce and Mr. González individually throughout 2001.  Statement of Facts ¶¶ 13-14, 16-19.  In June 2002, North Produce ceased its business operations.  Statement of Facts ¶ 25.  Throughout 2001 to 2002, Scotiabank received payments from North Produce on its loans.  Statement of Facts ¶¶ 21-23.  In 2004, Scotiabank sold equipment of North Produce and received the proceeds.  Statement of Facts ¶ 27.  In 2005, Scotiabank foreclosed on Mr. González's residence.  Statement of Facts ¶ 28.  Movsovitz and West

1

Coast filed suit against Scotiabank on November 12, 2004, to recover the loan payments and proceeds of the equipment and residence sales as PACA trust assets belonging to Movsovitz and West Coast. Scotiabank filed its Answer on January 25, 2005. Movsovitz and West Coast now move for summary judgment.

## II.   ARGUMENT

### A.   The Standard to Be Applied.

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing that there is no material factual dispute for trial. *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir. 1998); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1225 (11th Cir. 2002); *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Info. Sys. & Networks Corp.*, 281 F.3d at 1225; *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law will identify which

facts are material.  *Id.*

When the moving party does not bear the burden of proof on an issue at trial, it may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325; *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991).  The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim.  *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 885 (1990); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000); *Bhan*, 929 F.2d at 1409.  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Celotex*, 477 U.S. at 323.

When the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a *prima facie* showing in support of its position on that issue.  *US Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994).  That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id.*; *see also International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).  Once the moving party has done so, the non-moving party must set forth

specific facts controverting the moving party's *prima facie* case. *US Local 343*, 48 F.3d at 1471. Under Rule 56, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (citing *Celotex, supra*). The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." *US Local 343*, 48 F.3d at 1471. This standard does not change merely because resolution of the relevant issue is "highly fact specific." *Id.*

In the case at bar, there is no genuine dispute as to any material fact and Plaintiff is entitled to judgment as a matter of law. Accordingly, the entry of summary judgment is appropriate.

### B. There Are No Material Facts In Genuine Dispute.

Please refer to Statement of Undisputed Facts filed herewith pursuant to Local Rule 56.

### C. The Nature and Scope of the PACA Trust.

Congress enacted PACA in 1930 to encourage fair trading in the marketing of produce and to prevent unfair and fraudulent practices in an industry highly susceptible to such practices. H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. PACA requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C. § 499e(b)(4).

In 1984, Congress amended PACA to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until *full payment of sums due* has been received by them." (Emphasis added.) 1984 U.S.C.C.A.N. 406; *Frio Ice, S.A. v.*

4

*Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990)  ("[T]he central purpose of Section 499e(c) is to ensure payment to trust beneficiaries."); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132 (3d Cir. 2000).

To carry out this intent, Section 499e(c) imposes a statutory trust on all produce-related assets, including the produce itself, other products derived therefrom, and any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers, and brokers which must be maintained for the benefit of all unpaid suppliers and sellers of the produce until full payment has been made.  7 U.S.C. § 499e(c)(2).  The trust arises upon the commencement of the produce purchaser's business and is continually in existence throughout the life of the purchaser's business.  *Tanimura & Antle, Inc.*, 22 F.3d 132; *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996); *In re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142 (Bkrtcy. S.D. Fla. 1990).  The establishment of the trust is an unequivocal declaration that produce-derived assets are distinct and must be used to pay produce suppliers.

The trust is a non-segregated "floating" trust that applies to all of the buyer's produce in inventory and all proceeds from the sale of produce.  The PACA trust is described as "a non-segregated floating trust which hovers over not only the perishable commodities, but products made from them, the accounts receivable, and proceeds of them." *In re Monterey House, Inc.*, 71 B.R. 244, 246 (Bkrtcy. S.D. Tex. 1986); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bkrtcy. N.D. Tex. 1985).  Consistent with the concept of a floating, non-segregated trust over all trust assets for the payment of all produce creditors, the trust is continuous and exists from the moment a purchaser receives trust assets until *all* produce suppliers are paid in full.  *In re Kornblum & Co., Inc.*, 81 F.3d at 286-87; *In re*

*Atlantic Tropical Market Corp.*, 118 B.R. 139.  In addition, under common law trust principles, the trust extends to any other assets, including an interest in real property, acquired from a commingled account.  *In re Kornblum & Co., Inc.*, 81 F.3d at 286-87; *Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1110, 1013 (6th Cir. 1993); *In re Atlantic Tropical Market Corp.*, 118 B.R. at 142-43.

The party alleging that assets acquired with commingled funds are not part of the PACA trust bears a heavy burden of proving that the assets are free of the trust as explained in the *Sanzone-Palmisano* case.

> [A] purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. . . . [I]n the conventional case, where the produce was sold at a gross profit, the proceeds were commingled in a general fund, and the general fund was used to buy more inventory, the PACA debtor will be unable to met its burden and the produce supplier will prevail.  We believe that this is the outcome that Congress intended.

*Sanzone-Palmisano*, supra at 1014; *see In re Kornblum & Co., Inc.*, 81 F.3d at 287 ("[T]he produce dealer bears the burden of demonstrating that an asset was not acquired with the proceeds from the sale of particular produce, or from the sale of a particular produce-related asset."), *citing Sanzone-Palmisano Co.*, 986 F.2d at 1012; *In re Fresh Approach, Inc.*, 51 B.R. at 422; *see also International Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 n. 45 (1977)  ("Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof.").

The failure to segregate and pay the trust assets is a diversion of receivables that frustrates the rights of PACA trust creditors to immediate payment, and places such creditors in the exact position that PACA was meant to prevent, i.e., an irreparable loss of

trust assets because they cannot be recovered.  H.R. Rep. No. 543, 98th Cong. 2d Sess. 4 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 411; *Tanimura & Antle, Inc.*, 222 F.3d at 140; *J. R. Brooks & Son, Inc. v. Norman's Country Market, Inc.*, 98 B.R. 47 (Bkrtcy. N.D. Fla. 1989); *Continental Fruit v. Thomas J. Gatziolis & Co.*, 774 F. Supp. 449 (N.D. Ill. 1991); *Gullo Produce Co., Inc. v. Jordan Produce Co., Inc.*, 751 F. Supp. 64 (W.D. Pa. 1990). Failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful.  7 U.S.C. § 499b(4).  Furthermore, agricultural merchants and dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(e)(1).  "Any act or omission inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [7 U.S.C. § 499b]." *Id.*

A three-prong test governs situations like the present one.  *In re Kornblum & Co., Inc.*, 81 F.3d at 287.  To gain the proceeds realized from the sale of assets over the PACA trust creditors, a party has the burden of proving: 1) no PACA trust existed when the assets were acquired; or 2) even though a PACA trust existed at the time, the assets were not acquired with trust assets; or 3) although a PACA trust existed when the assets were acquired, and the assets were acquired with trust assets, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors herein.  *In re Kornblum & Co., Inc.*, 81 F.3d at 287.  In the instant case, the PACA trust existed at the time North Produce acquired and/or improved upon the assets Scotiabank received proceeds from, and the assets were acquired and/or improved upon using PACA trust assets.

      D.       Scotiabank Must Disgorge the Proceeds it Received from the Sale of Property Owned by North Produce and Mr. González and the <u>Payments of the Loans it Received from North Produce.</u>

           1.       Movsovitz and West Coast Are PACA <u>Trust Creditors of North Produce.</u>

Movsovitz and West Coast fulfilled their statutory obligations to perfect their interests as PACA trust creditors. While the trust arises once the produce is delivered to the produce purchaser, produce suppliers must preserve their interests in the PACA trust. 7 U.S.C. § 499e(c)(3-4). PACA requires produce suppliers to provide notice to the buyer of their intent to preserve trust benefits. Produce suppliers can preserve their trust benefits in one of two ways. First, a produce supplier may include the requisite trust language on his invoices sent to the produce purchaser at, or near the time, of delivery. 7 U.S.C. § 499e(c)(4). Second, a produce supplier may send a Notice of Intent to Preserve PACA Trust Rights within thirty days from the date payment is due. 7 U.S.C. § 499e(c)(3); 7 C.F.R. § 46.46(f)(2). Movsovitz and West Coast preserved their interests in the PACA trust by placing the requisite statutory language on their invoices to North Produce. Statement of Facts ¶ 9. As such, Movsovitz and West Coast are entitled to their share of PACA trust assets recovered.

           2.       The Proceeds Scotiabank Received from the Foreclosure Sale of Mr. González's Residence are Impressed with the <u>PACA Trust and Belong to Movsovitz and West Coast.</u>

The proceeds from the sale of Mr. González's residence are PACA trust assets. North Produce began its business relationship with Movsovitz in November 1999, prior to Mr. González's purchase of his residence. Statement of Facts ¶¶ 6, 13. Therefore, the PACA trust arose in November 1999, when North Produce made its first produce purchase

8

from Movsovitz.[1]

Mr. González's and Mrs. González's sole source of income was from North Produce's business operations at the time the Gonzálezes purchased the residence in 2000. Statement of Facts ¶¶ 4, 12. Mr. González purchased the residence for $125,000.00, with $25,000.00 cash and a $100,000.00 mortgage from Doral Bank. Statement of Facts ¶ 12. As such, the money Mr. González used to buy his residence consisted of proceeds North Produce received from sales of produce that was impressed with the PACA trust.

Scotiabank received its security interests in the residence in March and October 2001, nearly two years after the home was acquired with PACA trust assets. Statement of Facts ¶ 13. Since the two mortgages occurred after the residence was already impressed with the PACA trust, Scotiabank has the burden of proving that PACA assets were not used to purchase the residence, *In re Kornblum & Co., Inc.*, 81 F.3d at 287, which it has not done. Therefore, the proceeds from the sale of Mr. González's residence are impressed with the PACA trust and belong to Movsovitz and West Coast.

>   3.   The Proceeds Scotiabank will Receive from the Foreclosure Sale of Mr. González's Real Property are Impressed with the PACA Trust and Belong to <u>Movsovitz and West Coast.</u>

The expected proceeds from the future sale of Mr. González's real property are PACA trust assets. As discussed above, the PACA trust arose in November 1999, when North Produce made its first produce purchase from Movsovitz.

The Gonzálezes purchased the real property in November 2000, at which time their sole source of income was from North Produce's business operations. Statement of Facts ¶¶

---

[1] The PACA trust may have arisen earlier than November 1999. It is likely North Produce purchased produce from other produce suppliers since North Produce had been in business for 15 years prior to the beginning of its business relationship with Movsovitz. Account Information Form attached to Maurer Affidavit as Exhibit 1.

4, 14. The Gonzálezes purchased the real property for $57,000.00 cash.[2]  Statement of Facts ¶ 14. As such, the money the Gonzálezes used to acquire the property consisted of proceeds North Produce received from sales of produce that was impressed with the PACA trust.

Scotiabank received its security interest in the property in October 2001, nearly two years after the property was already impressed with the PACA trust. This case is a perfect illustration of what Congress wanted to prevent when it enacted the trust provisions of PACA – a produce purchasers using produce proceeds to purchase property, rather than paying the produce suppliers, and then mortgaging the property, attempting to avoid payment to the produce supplier. *In re Kornblum & Co., Inc.*, 81 F.3d 280; *Frio Ice*, 918 F.2d at 159. Finally, Scotiabank has the burden of proving that PACA assets were not used to purchased the property, *In re Kornblum & Co., Inc.*, 81 F.3d at 287, which it has not done. Therefore, the expected proceeds from the sale of Mr. González's real property in Camuy are impressed with the PACA trust and belong to Movsovitz and West Coast.

    4. Scotiabank Must Disgorge the $82,243.77 it Received from North Produce after North Produce Ceased Operations Because the Funds are PACA Trust Assets <u>that Belong to Movsovitz and West Coast.</u>

North Produce leased new facilities in 2001, which it agreed to make improvements to the facility with Compañia de Fomento Industrial de Puerto Rico. Statement of Facts ¶ 15. As part of the contract with Compañia de Fomento Industrial de Puerto Rico, North Produce would make the improvements and Compañia de Fomento Industrial de Puerto Rico would reimburse North Produce for the expenditures. Statement of Facts ¶ 15. Scotiabank loaned North Produce $100,000.00 in which it took a security interest in the reimbursement payments in June 2001. Statement of Facts ¶ 16. However, the

---

[2] The Gonzálezes have a 50% interest in the land.

improvements began in May 2001, prior to Scotiabank providing any funds to North Produce. Statement of Facts ¶ 15. Clearly, funds used by North Produce to pay for the improvements came from PACA trust assets.

Scotiabank was paid $82,243.77 by North Produce on July 3, 2002. Statement of Facts ¶ 26. However, the funds were impressed with the PACA trust since improvements began before the loan was issued. Further, Scotiabank has the burden to trace the funds used by North Produce to determine which funds were PACA trust assets and which were loans monies. *In re Kornblum & Co., Inc.*, 81 F.3d at 287. Therefore, Movsovitz and West Coast are entitled to receive the $82,243.77 Scotiabank received from North Produce.

Additionally, Scotiabank cannot qualify as a bona fide purchaser for value. A bona fide purchaser may, under certain limited circumstances, retain trust property unlawfully transferred if he does not have actual or constructive knowledge that the property was transferred in breach of trust. *C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311, 1313-14 (11th Cir. 1992); *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 1995 WL 766306, 3-4 (S.D.N.Y. 1995). However, the facts of the case establish that Scotiabank is not a bona fide purchaser.

Scotiabank knew that North Produce was in the business of buying and selling wholesale quantities of produce. Statement of Facts ¶ 5. Therefore, Scotiabank had notice that the PACA trust existed and that North Produce was a PACA trust trustee. Second, Scotiabank knew or should have known there was a breach of the trust because North Produce ceased its operations before Scotiabank received the funds. Statement of Facts ¶ 25. In fact, Scotiabank was at North Produce's closed business location analyzing its ability to recover on the loans when it took the check from Mr. González. *Id.*

11

Scotiabank also was aware that North Produce was insolvent at the time of the payment.[3] Statement of Facts ¶ 24. Therefore, Scotiabank is required to disgorge the $82,243.77 to Movsovitz and West Coast as PACA trust creditors.

> 5. Scotiabank Must Disgorge the $34,624.00 it Received in Payments from North Produce after North Produce Became Insolvent Because the Funds are PACA Trust <u>Assets that Belong to Movsovitz and West Coast.</u>

As discussed above, Scotiabank is not a bona fide purchaser for value because Scotiabank had notice of the PACA trust and breach of the PACA trust. From September 26, 2001 to June 28, 2002, Scotiabank received $34,624.00 in loan payments from North Produce. Statement of Facts ¶¶ 21-22. However, at the time Scotiabank received the payments it was aware that North Produce was financially insolvent, or was in danger of becoming financially insolvent. Statement of Facts ¶ 24. Therefore, Scotiabank is required to disgorge the $34,624.00 to Movsovitz and West Coast as PACA trust creditors.

> 6. The Proceeds Scotiabank Received from the Sale of North Produce's Equipment are Impressed with the <u>PACA Trust and Belong to Movsovitz and West Coast.</u>

Scotiabank received $7,000.00 from the sale of North Produce's equipment in July 2004. Statement of Facts ¶ 27. The proceeds from the sale of North Produce's equipment are PACA trust assets. As discussed above, the PACA trust arose in 1999. North Produce had equipment at its old facilities and its new facilities. Statement of Facts ¶ 20. North Produce expanded into its new facility in 2001, after the creation of the

---

[3] Movsovitz and West Coast served Scotiabank with Requests for Admissions on June 1, 2005, which Scotiabank failed to respond. Under Fed. R. Civ. P. 36(a), a matter is deemed admitted if it is not responded to within 30 days. *See Brook Vill. N. Assoc. v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982) (any matter admitted under Rule 36 is conclusively established).

PACA trust.  Statement of Facts ¶¶ 6, 15.  Scotiabank has the burden of proving that North Produce did not use PACA trust assets to purchase the equipment.  *In re Kornblum & Co., Inc.*, 81 F.3d at 287.  Without meeting that burden, the proceeds from the sale of the equipment are PACA trust assets that belong to Movsovitz and West Coast.

### III.     CONCLUSION

For the foregoing reasons, Plaintiffs request judgment against Defendant Scotiabank requiring Scotiabank to disgorge to Plaintiffs the proceeds from 1) the sale of the Gonzálezes' residence, 2) the future sale of the Gonzálezes' other real property, 3) the payment Scotiabank received from North Produce after North Produce ceased operations, 4) the loan payments Scotiabank received from North Produce while North Produce was insolvent, and 5) the sale of North Produce's equipment.

Dated: November 7, 2005.

Respectfully submitted,

| | |
|---|---|
| s/Louis W. Diess, III | s/Orlando Fernández |
| Louis W. Diess, III | Orlando Fernández (126912) |
| McCarron & Diess | García & Fernández |
| 4900 Massachusetts Ave., N.W. | 33 Calle Bolivia, Suite 701 |
| Suite 310 | San Juan, PR 00917-2010 |
| Washington, DC 20016 | (787) 764-1932/Fax 766-2132 |
| (202) 364-0400 | ofernandez@gflawpr.com |
| ldiess@mccarronlaw.com | |
| | s/Craig Stokes |
| | Craig Stokes |
| | Santos Stokes LLP |
| | 3330 Oakwell Court, Suite 225 |
| | San Antonio, Texas 78218 |
| | (210) 804-0011 |
| | cstokes@santosstokes.com |
| | Attorneys for Plaintiffs |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of November, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Fernando J. Fornaris, ffornaris@cnrd.com; James W. McCartney, jmccartney@cnrd.com.

<u>s/Orlando Fernandez</u>

Orlando Fernandez